<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CARLOS ALAMO, | : | Civil No.: 11-5416 (JBS) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| DONNA ZICKEFOOSE, WARDEN, | : |  |
|  | : |  |
| Respondent. | : |  |

**APPEARANCES:**

CARLOS ALAMO, Petitioner <u>Pro Se</u>
#46328-054
F.C.I. Ray Brook
P.O. Box 9006
Ray Brook, New York 12977

ELIZABETH ANN PASCAL, AUSA
OFFICE OF THE U.S. ATTORNEY
401 Market Street, P.O. Box 2098
Camden, New Jersey 08101
Counsel for Respondents

**SIMANDLE,** Chief Judge

On or about September 20, 2011, Petitioner, Carlos Alamo ("Petitioner"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges sanctions imposed as the result of a prison disciplinary infraction. Namely, Petitioner seeks to expunge disciplinary sanctions that included loss of good conduct time. The named Respondent is the Warden of FCI Fort Dix, Donna Zickefoose, who was acting Warden

at the time Petitioner filed this habeas action.[1]  Respondent
answered the petition on July 11, 2012, and provided a copy of
the pertinent administrative record.  (Docket Entry No. 8).
Petitioner filed a reply/traverse to the Government's answer on
August 14, 2012.  (Docket entry no 9).

## I.  BACKGROUND

Petitioner challenges a January 17, 2011 prison disciplinary
action brought against him while he was confined at FCI Fort Dix,
which resulted in the loss of good conduct time ("GCT").
Petitioner is presently serving a 151-month prison sentence
imposed by the United States District Court for the Southern
District of New York, on November 3, 2000, following his
conviction for conspiracy and possession with intent to
distribute heroin, in violation of 18 U.S.C. §§ 846.
Petitioner's projected release date is January 30, 2015, assuming
he receives all good conduct time ("GCT") available to him under
18 U.S.C. § 3624(b).  (See Declaration of Tara Moran, ¶ 11 and
Exhibit 1).

The January 2011 incident at issue in this habeas petition
begins with an investigation by FCI Fort Dix officials on

---

[1]  Petitioner also named Captain Fitzgerald and Disciplinary
Hearing Officer ("DHO") A. Boyce as Respondents, but only the
person having custody over Petitioner is the proper party
respondent in a federal habeas action.  See 28 U.S.C. § 2242.
The petition will be dismissed against Fitzgerald and Boyce for
this reason.

September 26, 2010.  On September 26, 2010, at about 10:35 a.m., an individual was arrested off the FCI Fort Dix perimeter road by Department of Defense ("DOD") Police.  The individual was carrying a bag containing six individual packages of tightly wrapped contraband that appeared consistent with numerous contraband packages intercepted by FCI Fort Dix staff.  In particular, the packages contained 200 packs of Bugler tobacco, five picture-capable cell phones, and two Blackberry cell phones. (Moran Decl., Ex. 6 at R002, R003, R014-15, R017-20.)  The individual identified Petitioner's brother and girlfriend as having recruited him to make the contraband drop.  (Id., R011-12, R035, R037-39.)  The Petitioner's girlfriend drove the individual to FCI Fort Dix, where she gained access to the base on the pretense of a social visit as she was on the Petitioner's approved visitor list.  (Id., R002, R011, R013-14, Ro21, R028.) The individual was to be paid $5,000 for his participation in the contraband scheme.  (Id., R003, R013, R035, R037.)

Petitioner was placed in the Special Housing Unit ("SHU") while the Special Investigation Service ("SIS") conducted an investigation.  On January 17, 2011, at 8:00 p.m., SIS Lieutenant Martusciello, the reporting officer, issued an Incident Report #2113318, charging Petitioner with Attempted Introduction of a Hazardous Contraband, a Code 108A violation.  (Moran Decl., Ex.

5)  Specifically, the Incident Report details the incident as

follows:

> An SIS Investigation concluded that on September 26, 2010,
> inmate Carlos Alamo 46328-054 attempted to introduce
> contraband into FCI Fort Dix consisting of numerous cell
> phones to include blackberrys and a large quantity of
> tobacco pouches.
>
> An individual was arrested off the FCI Ft. Dix perimeter
> road by DOD Police carrying a bag containing six individual
> packages of tightly wrapped contraband consistent in
> appearance with numerous contraband packages intercepted by
> staff at FCI Fort Dix.  The individual identified #######
> and ####### as recruiting him to make the contraband drop
> intended for ####### brother/cousin (Carlos Alamo).  Both
> were listed by name and telephone number as Alamo's
> visitors.
>
> On September 26, 2010, at approximately 10:35 a.m., #######
> entered the Fort Dix Military Installation thru the FCI
> Visiting Check Point driving a van with New York Plate
> number #####. ####### identified inmate Carlos Alamo 46328-
> 054 as the inmate she was visiting at the FCI.  An
> individual was arrested and detained by DOD Police on
> September 26, 2010, for Criminal Trespass and Providing
> Contraband into a Prison (Cell Phone and Tobacco).  The
> individual identified ####### as the driver of the vehicle
> which brought him to Fort Dix with the intention of
> introducing a bag filled with contraband into the Federal
> Correctional Institution.

(Id., Ex. 5 at ¶ 11.)

The Incident Report indicates that the report was delivered

to Petitioner on January 17, 2011 at 8:30 p.m., that the matter

was investigated that date on January 17, 2011, and that

Petitioner was advised of his rights during this disciplinary

process on January 17, 2011, at 8:30 p.m.  (Id., Ex. 5 at ¶¶ 15,

16, 22 and 23.)  The Incident Report further provides

Petitioner's statement to the investigating staff as follows:

4

> Inmate Alamo, Carlos #46328-054 was advised of his
> institution rights and stated he understood them.  He was
> read and given a copy of the incident report.  When asked
> inmate Alamo if he would like to make a statement regarding
> the incident report his replied [sic] was yes.  Inmate Alamo
> made the following statement.  The incident report is not
> true.
>
> Inmate Alamo displayed a poor attitude during this
> investigation.

(Id., Ex. 5 at ¶ 24).  Based on the information contained in the

report, and on Petitioner's statement and attitude, the

Investigator concluded the report to be accurate and the charges

valid, and referred the matter to the Unit Disciplinary Committee

("UDC") for further disposition.  (Id., Ex. 5 at ¶¶ 26-27.)

The UDC conducted its hearing a few days later, on January

20, 2011.  Petitioner stated at the UDC hearing that "She don't

drive a van -- she got a car, man.  There ain't nothing to talk

about."  (Id., Ex. 5 at ¶ 17.)  Given the seriousness of the

charge and the information contained in the Incident Report, the

UDC referred the matter to a Disciplinary Hearing Officer ("DHO")

for disposition.  (Id., Ex. 5 at ¶¶ 19-20.)

Petitioner was given written Notice of the DHO Hearing as

well as a written statement of his rights before the DHO.  He

also was advised that he could have a staff representative and

call witnesses and present documentary evidence at his DHO

hearing.  Petitioner signed both forms, indicating that he did

not wish to call witnesses or have a staff representative.

(Moran Decl., Ex. 6 at R008, R009.)

5

The DHO hearing was conducted on February 2, 2011.  After again being advised of his rights, Petitioner was read the incident report and responded, "I had nothing to do with that." The DHO then asked Petitioner if he knew the driver of the van that had brought the individual caught with the contraband into FCI Fort Dix.  Petitioner replied that he knew the driver and then asked, "What can I do to make this go away right now?  I know a lot about how more stuff is coming in."  (Id., Ex. 6 at R001.)

At the hearing, the DHO relied on the following documentary evidence: (1) a copy of the Inmate Investigative Report (R010-R016); (2) five photos of tobacco and cell phones seized (R017-R020); (3) copy of the visiting list (R021); (4) four pages of e-mails (R022-R025); (5) a copy of the Violation Notice (R026, R027); and the statement of the individual/suspect (R034-R038). The DHO also recited the Incident Report and Petitioner's responses at the UDC hearing and the DHO hearing.  (Id., Ex. 6 at R002, Section V, pg. 2.)  The DHO further summarized the evidence considered at the hearing as follows:

> The DHO also considered the investigative report, specifically, "An individual whose friend is ##### (Brother of inmate Carlos Alamo 46328-054) told him about a job where he would go to New Jersey, deliver a bag full of tobacco and get paid $5000.00. ##### told the individual that a girl by the nick name of ##### (identified as #####) would contact him.  He was called by ##### and instructed on the details of the job.  She told him she would be driving to a jail in New Jersey, once there he was to take a bag full of tobacco to a one story building drop the bag on the floor then

return to the vehicle to drive back to the city and be paid the $5000.00.  The individual then said he was contacted a week late by ##### and told they would be doing the drop the coming Sunday.  (September 26, 2010).  On Sunday morning, ##### called him around 5:30 a.m., to see if he was awake, got his address then an hour and 20 minutes late showed up to pick him up.  The individual stated when they approached the prison, ##### told him to go hid in the back of the van she was initially denied access because the proof of insurance on the van was expired.  When they got on the base, they went to the visitor's parking lot where ##### told him to wait for the perimeter patrol car to pass.  Then he got out of the van with the bag in hand and walked over to where he was supposed to make the drop.  As he got to the drop site, he was approached by a DOD officer in a vehicle and instructed to get down on the ground.  He did as instructed by the office and has cooperated as much as possible."

Also considered was the interview work sheet dated September 26, 2010, by DOD investigations, specifically, "##### said they would communicate by cell phone, and he was to drop the bag at the corner of a one story building then return to the van. ##### was referred to as the girlfriend of ##### cousins, (Carlos Alamo 46328-054).

Considered also was the information that Carlos Alamo 46328-054 was in possession of a cell phone and was heard using it to order contraband.  Alamo was overheard ordering multiple cell phones, Ipod, 200 pouches of tobacco and Casio watches.

Contraband confiscated from the individual on September 26, 2010, by DOD Police consisted of approximately 200 packs of Bugler tobacco, currently selling for approximately $120.00 each ($24,000.00), 5-picture capable cell phones approximately $600.00 each ($3,000.00) and 2-Blackberry cell phones approximately $800.00 each ($1,600.00).

Also considered was your past disciplinary history in which you had previously been involved in contraband smuggling at the State level.[2]

_____

[2]  Ths Court notes that Petitioner was convicted in a New York state court of Promoting Prison Contraband in the First Degree, a Class D felony, for smuggling contraband into the Rikers Island Correctional Facility in New York. See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130.

The violation of prohibited act code 108A, Possession of a Hazardous Tool (attempting or aiding), is supported in the incident report, specifically, "An SIS investigation concluded that on September 26, 2010, inmate Carlos Alamo 46328-054 attempted to introduce contraband into FCI Fort Dix consisting of numerous cell phones to include blackberrys and a large quantity of tobacco pouches.

An individual was arrested off the FCI Ft. Dix perimeter road by DOD Police carrying a bag containing six individual packages of tightly wrapped contraband consistent in appearance with numerous contraband packages intercepted by staff at FCI Fort Dix.  The individual identified ##### and ##### as recruiting him to make the contraband drop intended for ##### brother/cousin (Carlos Alamo).  Both were listed by name and telephone number as Alamo's visitors."

Based upon the evidence presented before me I find that you did commit the prohibited act Code 108A, Possession, Manufacture, of a Hazardous Tool (Aiding or Attempting).

(Id., Ex. 6 at R003, Section V at pg. 3.)

The DHO thereafter imposed the following sanctions: (1) disallowance of 40 days good conduct time ("GCT"); (2) forfeiture of 291 days non-vested GCT; (3) six months loss of commissary privileges from February 2, 2011 through August 1, 2011; (4) 18 months loss of telephone privileges from February 2, 2011 through August 1, 2012; and (5) 18 months loss of TRULINCS privileges from February 2, 2011 through August 1, 2012.  In addition, Petitioner was placed in disciplinary segregation for 30 days from February 2, 2011 through March 3, 2011.  These sanctions were documented at the bottom of the DHO Report in Section VI. (Id., Ex. 6 at R003.)

The DHO explained the reasons for these sanctions as follows:

The action on the part of any inmate to attempt to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the recent past, inmates have used hazardous tools to affect escapes, and seriously injure other inmates and staff members. A cell phone falls under the classification of a hazardous tool, as it is used to arrange rendezvous for escapes, and has been used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff. In accordance with the memorandum dated December 28, 2009, submitted by Donna Zickefoose, Warden, a cell phone charger is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.

Disciplinary Segregation, Disallowance of Good Conduct Time, Forfeiture of Non Vested Good Conduct Time, and loss of commissary, telephone, TRULINCS, and visits, are meant to demonstrate the seriousness of the offenses to you as well as everyone incarcerated at this facility.

(Id., Ex. 6 at R004, Section VII, pg. 4.)

The DHO signed the DHO Report on March 1, 2011 and delivered it to Petitioner that same day. (Id., Ex. 6 at R004.) The DHO Report also advised Petitioner of his appeal rights under the Bureau of Prisons' ("BOP") Administrative Remedy Procedures. (Id.)

Petitioner appealed the DHO's decision and disciplinary sanctions directly to the BOP's Northeast Regional Office on or about March 9, 2011. (Moran Decl. at ¶ 5 and Ex. 3, Administrative remedy No. 630638-R1.) Petitioner's administrative remedy did not include a complaint that written notice of the charges were not received by him or that the

evidence relied upon by the DHO was insufficient.  (Id.)  The
Regional Director denied the administrative appeal on or about
April 8, 2011, stating as follows:

> You appeal the February 2, 2011 decision of the Discipline
> Hearing Officer (DHO) at FCI Fort Dix, finding you committed
> the prohibited act of Possession of a Hazardous Tool, Code
> 108, Incident Report No. 2113318.  You contend you were
> erroneously charged and sanctioned for Code 108 when you
> should have been charged with Code 305.  You state, inmate
> discipline under 28 C.F.R., was never amended, denying you
> proper notice of this misconduct.  You cite recent case law
> and request that the charge be expunged.
>
> You challenge the finding by the DHO that on September 26,
> 2010, you attempted to introduce numerous cell phones,
> Blackberry's and tobacco into FCI Fort Dix.  Two people were
> arrested attempting to introduce the items.  The female was
> on your visiting list.  By memorandum dated December 28,
> 2009, the Warden at FCI Fort Dix advised the inmate
> population that any inmate found in possession of electronic
> communication devices or related equipment such as cell
> phones, chargers, video equipment, etc., may be charged with
> a violation of Code 108.  The cases you cite involve
> different circumstances and do not apply to your
> disciplinary action.  Cell phones and related equipment are
> properly considered hazardous tools, because they pose a
> significant security concern for the institution.  They may
> be used to make/send unmonitored calls or messages.
> Inclusion of cell phones/electronic communication devices
> within Code 108 does not require a formal rule change.  You
> received adequate notice, and you were appropriately charged
> and sanctioned.
>
> The record in this case reflects substantial compliance with
> Program Staement5270.08, Inmate Discipline.  The decision of
> the DHO was based upon the greater weight of the evidence
> and the sanctions imposed were consistent with the severity
> level of the prohibited act.  The sanctions imposed: 30 days
> disciplinary segregation, disallowance of 40 days good
> conduct time, forfeit 291 days non vested good conduct
> time[, ] 6 months loss of commissary and visiting
> privileges, and 18 months loss of telephone and TRULINCS
> privileges, were not disproportionate to your misconduct.
> Accordingly, your appeal is denied.

10

(Moran Decl., Ex. 3.)

On or about July 18, 2011, Petitioner filed an appeal with the Central Office, which was rejected as untimely.  (<u>Id.</u>, at ¶ 6 and Ex. 3.)  On August 16, 2011, Petitioner resubmitted his appeal to the Central Office, which again was rejected as untimely on August 23, 2011.  (<u>Id.</u>, ¶ 7 and Ex. 2.)  Petitioner then submitted an appeal to the Warden at FCI Fort Dix on August 30, 2011, which was rejected on August 31, 2011, as untimely and for being filed at the wrong level.  (<u>Id.</u>, ¶ 8.)

Petitioner was transferred to RCI Ray Brook in New York on December 29, 2011.  (<u>Id.</u>, Ex. 4.)

In his habeas petition, Petitioner states that he was placed in the SHU on September 27, 2010 pursuant to the SIS investigation regarding the attempt to introduce contraband into the FCI Fort Dix facility.  (Petition at ¶ 1.)  On January 11, 2011, Petitioner asked Captain Fitzgerald about Petitioner's status and Captain Fitzgerald allegedly became "hostile, angry and very aggressive" towards Petitioner.  (<u>Id.</u>, ¶ 2.)  Petitioner further alleges that Captain Fitzgerald said, "You want to bring contraband into my jail, Huh ... I'm sending you to the west coast, How about that."  When Petitioner told the Captain that he was not involved in any wrongdoing and has not yet received an incident report, Captain Fitzgerald replied, "I'm going to give

you an incident report and talk to the D.H.O. personally to make sure he takes all of your good time." (Id., ¶¶ 3, 4.)

Petitioner alleges that six days later, on January 17, 2011, he was read the incident report but was not given a copy of the report.  He further alleges that despite repeated requests to his unit team, Petitioner did not receive a copy of the incident report until August 1, 2011.  (Id., ¶¶ 6, 7.)  Petitioner also alleges that he was never charged with a Code 108 violation (possession of a hazardous tool), and that at that time, possession of cell phones and tobacco was a Code 305 violation.  Thus, Petitioner contends that he was sanctioned more harshly under the Code 108 violation rather than a Code 305 violation, "differently than other inmates similarly situated" in violation of his right to equal protection.  (Id., ¶¶ 10-14.)  Petitioner also alleges that he was never involved in contraband smuggling and that the prior state charge referenced by the DHO involved possession of a weapon (prison contraband) and not smuggling.  (Id., ¶ 16.)  Additionally, Petitioner contends that DHO Boyce was influenced by staff members to increase sanctions by changing violations from a Code 305 to a Code 108.  Petitioner cites to an example regarding another inmate in an unrelated incident.  (Id., ¶ 17.)

In his reply to the Respondents' answer, Petitioner alleges that he twice tried to exhaust his administrative remedies, but

was rejected on grounds of untimeliness.  (Petitioner's Reply at
¶ 1.)  Petitioner also continues to allege that Captain
Fitzgerald "acted outside of her ethnic [sic] code and did
threaten" Petitioner with filing an incident report.  (Id., ¶¶ 3,
4.)  Petitioner again refers to other inmates who had Code 108
charges reduced to Code 305 violations, and that Code 108 did not
include cell phones at the time of Petitioner's incident.  (Id.,
¶¶ 5, 6.)  Petitioner further argues that a cell phone was never
found in his possession, and that "D.H.O. Boyce's D.H.O. report
is sloppy and has lies due to the fact that he sanctioned him on
the Captains orders."  (Id., ¶¶ 7-9.)

## II.  DISCUSSION

### A.  Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28
U.S.C. § 2241(c)(3).[3]  That section states that the writ will not
be extended to a prisoner unless "he is in custody in violation
of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2241(c)(3).

---

[3]  United States Code Title 28, Section 2241, provides in
pertinent part:

> (a) Writs of habeas corpus may be granted by the
> district courts within their respective jurisdictions

> (c) The writ of habeas corpus shall not extend to a
> prisoner unless-    (3) He is in custody in violation
> of the Constitution or laws or treaties of the United
> States.

13

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a Code level

100 category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for Code Level 100 and 200 category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

15

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Exhaustion of Administrative Remedies

As an initial matter, Respondent argues that Petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v.

16

<u>Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); <u>Carling v. Peters</u>, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In <u>Snisky v. Pugh</u>, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  <u>See</u> 974 F. Supp. 817, 819 (M.D. Pa. 1997), <u>rev'd on other grounds</u>, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  <u>See</u> <u>id.</u>  In <u>Snisky</u>, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in <u>Ferrante v. Bureau of Prisons</u>, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. <u>See</u> 990 F. Supp. 367, 370 (D.N.J. 1998)(citing <u>Snisky</u>, 974 F.

17

Supp. at 819-20). Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached. See id. See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that Petitioner did attempt to exhaust his administrative remedies on appeal to the Regional Director, which appeal was denied on the merits on April 8, 2011. (Moran Decl., Ex. 3.) Petitioner's appeals to the Central Office were rejected as untimely, and thus Respondents assert that administrative remedies were not fully exhausted. Respondents further assert that Petitioner's allegations of procedural violations, such as receipt of written notice, were not raised by Petitioner in his administrative appeals. See Pinet v. Holt, 316 Fed. Appx. 169, 171 (3d Cir. 2009)(noting that presentation of claims for the first time in a habeas petition and failure to present such claims at every level of the administrative remedy process constituted a failure to exhaust administrative remedies). It is clear that any effort now to have Petitioner exhaust his administrative remedies would be rejected as untimely, and thus, such exhaustion would indeed be futile. Moreover, the record here, as discussed below, shows that

18

Petitioner's claims of procedural due process violations are clearly without merit.  Accordingly, the exhaustion issue need not be reached, especially where to now require Petitioner, at this point, to exhaust his administrative remedies would be futile.  Therefore, the Court will address the merits of this petition.

D.   <u>Merits of Petitioner's Claims</u>

    1.   *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  <u>See</u> <u>Von</u>

19

Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).
However, in Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

Here, it would appear that Petitioner alleges that he was
denied procedural due process because he did not receive written
notice of the charges before his DHO hearing.  In particular,
Petitioner alleges that he was read the incident report but was
not given a copy of the incident report.  This allegation was
never raised by Petitioner in his administrative appeal to the
BOP Northeast Regional Office.  Nor does it appear from the
record that Petitioner made a request for a copy of the Incident
Report at or before the DHO hearing.  The first time this claim
was presented was in the instant habeas petition.

Nevertheless, the evidence of the record belies Petitioner's
claim that he did not receive written notice of the charge
against him.  The incident report itself acknowledges that the
incident report was read and delivered to Petitioner by staff
member P. Kenner on January 17, 2011 at 8:30 p.m.  (Moran Decl.,
Ex. 5 at ¶¶ 14, 15, 16 and 24.)  Further, the DHO Report notes

that advance written notice of the charge was given to Petitioner
on January 17, 2011 at 8:30 p.m.  (Moran Decl., Ex. 6 at R001, ¶
I.A.)  The DHO read the incident report to Petitioner and
Petitioner's statement and response did not indicate that
Petitioner was unaware of the charges against him.  Rather,
Petitioner's statement, "I had nothing to do with that. ... What
can I do to make this go away right now? I know a lot about how
more stuff is coming in," shows Petitioner was aware of the
disciplinary charge.  Petitioner had opportunity at the DHO
hearing to raise his allegation that he did not receive a copy of
the incident report and he never did.  He also never made such a
claim in his administrative remedy appeal.

        Consequently, there is no evidentiary support for
Petitioner's claim that he did not receive advance written notice
of the disciplinary charge.  Instead, Petitioner provides only
his belated self-serving allegation to the contrary.  Petitioner
received notice of the charge against him on January 17, 2011,
and he was present at the January 17, 2011 investigation
interview conducted with respect to the disciplinary charge.
Thus, it can not be said that Petitioner was uninformed or
unprepared to address the charge against him when he appeared for
his DHO hearing on February 2, 2011.  Moreover, Petitioner must
show that he was prejudiced by not receiving the incident report
within 24 hours, and he has not done so.  See Bullard v. Scism,

449 Fed. Appx. 232, 235 (3d Cir. 2011)(citing <u>Von Kahl</u>, 855 F.
Supp at 1421), <u>cert</u>. <u>denied</u>, 132 S.Ct. 1948 (April 16, 2012); <u>see</u>
<u>also</u> <u>Wilson v. Ashcroft</u>, 350 F.3d 377, 380-81 (3d Cir. 2003).

Accordingly, this Court finds that Petitioner's
unsubstantiated claim that written notice of charges was not
provided to him before his DHO hearing is not sufficient to
establish a due process violation.[4]   The record shows that
advance written notice of the incident report was provided to
Petitioner on January 17, 2011 at 8:30 p.m., well before the
February 2, 2011 DHO hearing.   (<u>See</u> Moran Decl., Ex. 5, ¶¶ 14-16,
24.)   Further, the record shows that Petitioner was advised of
his rights at the investigation interview on January 17, 2011, as
well as being informed of his right to call witnesses, present
documentary evidence and to have a staff representative.   (<u>Id</u>.,
¶¶ 23, 24, 25.)   These rights were again read and provided to
Petitioner by staff member R. Herbik on January 20, 2011.   (Moran
Decl., Ex. 6 at ¶ I.C.)   Petitioner declined a staff
representative, denied the charges and did not request any
witnesses or present any documentary evidence.   (<u>Id</u>., ¶¶ II.A,

---

[4]   Petitioner makes an additional claim that there is a
discrepancy in the title of the charge between the Incident
Report and the DHO Report.   This claim is entirely without merit.
The incident report lists the disciplinary charge as
"introduction of hazardous contraband (attempted)" and a Code 108
violation.   The DHO Report lists the charge as a Code 108A
(attempted) and describes it as "Possession of a Hazardous Tool
(Attempted, Aiding).   Consequently, both Code violations are
identical, Code 108.

III.A, C.1.)  Petitioner further was provided a written copy of the DHO Report on March 1, 2011 at 2:00 p.m.  (<u>Id</u>., ¶ IX.)  Therefore, this Court concludes that Petitioner has not demonstrated any procedural due process violation under <u>Wolff</u> or <u>Von Kahl</u> in this case to warrant habeas relief under § 2241.

2.  *Sufficient Evidence to Support the Charge and Sanctions*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985); <u>Young v. Kann</u>, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

<u>Hill</u>, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  <u>Id.</u> at 457.  <u>See</u>

also Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989); Moles v. Holt, 221 Fed. Appx. 92, 94 (3d Cir. Mar. 23, 2007)("A court need not undertake a searching inquiry to ascertain the presence of 'some evidence' supporting a disciplinary ruling; the 'relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.'"(quoting Hill, 472 U.S. at 455-56)(emphasis added in Moles)). Further, "a challenge that goes to the weight of the evidence is irrelevant to the issue of whether the DHO's finding had a constitutionally sufficient evidentiary basis." Moles, supra (citing Thompson v. Owens, 889 F.2d at 502).

Here, the DHO considered significant evidence to support the finding of guilt on the Code 108 charge.  The DHO relied upon the Incident Report, the detailed January 2011 SIS investigation report, photographs of the numerous cell phones, Blackberry's and tobacco recovered in the smuggling scheme on September 26, 2010, and Petitioner's own statements made at the DHO hearing.  The DHO further relied upon the statements of the suspects apprehended on September 26, 2010, Petitioner's visiting list which included one of the suspects, e-mails between Petitioner and his girlfriend, and confidential information from an informant that Petitioner was in possession of a cell phone and was using it to order contraband.  (Moran Decl., Ex. 6 at R002-R003, R010-R038.) Finally, the DHO relied upon Petitioner's prior conviction for

24

smuggling contraband into Rikers Island Correctional Facility. (Id., Ex. 6 at R003, R015-R016.)

This ample list of evidence relied upon by the DHO as expressed in the DHO's Report plainly shows that the DHO's finding of guilt was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457. Petitioner has failed to proffer any sufficiently credible evidence to the contrary.

Instead, Petitioner merely refutes that he was convicted for smuggling contraband in a state facility, and he argues that the DHO lied about the confidential information used in rendering the determination of guilt. Petitioner further argues that the DHO's findings are based on "lies due to the fact that he sanctioned [Petitioner] on the Captains orders." (Pet. Reply at ¶ 9.) While the record belies Petitioner's protestations, Petitioner having admitted that he pled guilty to having contraband in state prison and the record showing the confidential information came from an independent source, namely, the SIS investigation and not Captain Fitzgerald, Petitioner's arguments in this regard do not support a due process violation that would serve to invalidate the DHO's findings. "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641,

653-54 (3d Cir. 2002); see also McKeathan v. Beard, 322 Fed. Appx. 194, 199 (3d Cir. April 6, 2009).

Thus, as fully discussed above, it is plain that the due process procedures enunciated in Wolff, supra, were complied with, and that there was "some evidence" in accordance with Hill, supra, to support the DHO's finding of guilt. See Pachtinger v. Grondolsky, 340 Fed. Appx. 774, 777 (3d Cir. 2009); Hernandez-Zapata v. Schultz, 2011 WL 1326815 (D.N.J. Apr. 4, 2011); Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).  Therefore, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

   3.  *Equal protection Claim*

   Petitioner also asserts that the BOP violated his right to equal protection because it reduced the 108 code violation to a 305 code violation for other inmates, namely Duane Hudson (#06077-029) and Michael Garcia (#40236-424), who previously filed § 2241 petitions.  This Court takes judicial notice of these two cases, Hudson v. Zickefoose, No. 10-251(RBK), 2010 WL 4746220 (D.N.J. Nov. 15, 2010) and Garcia v. Zickefoose, No. 10-

1725 (JBS), 2011 WL 6179785 (D.N.J. Dec. 12, 2011), <u>appeal dismissed</u> (3d Cir. 12-1258)(Feb. 28, 2012).  In <u>Hudson</u>, Hudson filed a § 2241 habeas petition on January 15, 2010, challenging the loss of good conduct time for possession of a cell phone at FCI Fort Dix, in violation of code 108.  The Honorable Robert B. Kugler, U.S.D.J., found that the petition was rendered moot since the BOP had re-sanctioned Hudson for committing a code 305 violation, but determined that, "even if the Petition has not been rendered moot ..., Petitioner's challenges would be subject to dismissal."  2010 WL 4746220 at *1 (citing <u>Pittman v. Zickefoose</u>, No. 10-5057(RMB)(D.N.J. Oct. 20, 2010)).

In <u>Garcia</u>, Michael Garcia filed a § 2241 petition challenging the loss of 41 days of good conduct time for possession of a cell phone in violation of code 108.  This Court dismissed several of Garcia's claims concerning the imposition of a Code 108 violation because the claims were rendered moot when the BOP provided a remanded hearing on a reduced Code 305 violation rather than the charged Code 108 violation.  "Specifically, it was determined that SCP Marion did not provide their inmates with notice that possession of a cell phone was changing from a Code 305 violation to a greater severity level Code 108 violation."  <u>Garcia</u>, 2011 WL 6179785 at *6.

Petitioner's reference to the <u>Hudson</u> and <u>Garcia</u> cases is unavailing to sustain an equal protection violation.  The Equal Protection Clause requires that all people similarly situated be

treated alike.  See City of Cleburne v. Cleburne Living Ctr., 473
U.S. 432, 439 (1985).  A petitioner who alleges an equal
protection violation has the burden of proving the existence of
purposeful discrimination that had a discriminatory effect on
him.  See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Whitus v.
Georgia, 385 U.S. 545, 550 (1967).  "Thus, to prevail under the
Equal Protection Clause, [Petitioner] must prove that the
decisionmakers in his case acted with discriminatory purpose."
McCleskey, 481 U.S. at 292.

In this case, other than alleging that Zickefoose and Boyce
reduced the severity of the disciplinary charge for cell phone
possession in two other cases, Petitioner has alleged no facts to
indicate that his disciplinary sanction was the result of
purposeful discrimination.  It is evident from review of the
cases cited by Petitioner that Petitioner's factual circumstances
differ greatly from both Hudson and Garcia.  Accordingly, his
equal protection claim fails.  See Millard v. Hufford, 415 Fed.
Appx. 348, 349-50 (3d Cir.  Feb. 28, 2011)("Millard cited various
cases in which inmates received less severe punishment for the
same violation committed by Millard (possession of a weapon),
arguing that because he received harsher punishment than other
inmates for the same offense, the punishment must have been the
result of discrimination.... Millard's argument falls well short
of establishing the purposeful discrimination necessary to make
out an equal protection claim").  See also Lloyd v. Shartle, 2012

28

WL 4442416 (D.N.J. Sept. 21, 2012); <u>Bouchard v. Shartle</u>, 2011 WL 2559530 (D.N.J. June 27, 2011).

　　4.　*Notice Argument That Possession of Cell Phones Are Code 108 Hazardous Tool Offense*

　　Petitioner also argues that Code 108 was inappropriately applied to him, that he did not have notice that possession of a cell phone constituted a Code 108 hazardous tool offense, and that the BOP did not follow the Administrative Procedures Act in making possession of a cell phone a Code 108 offense.  Recent decisions of the Court of Appeals for the Third Circuit compel this Court to find Petitioner's claims to be meritless.   <u>See</u>, <u>e.g.,</u> <u>Hall v. Zickefoose</u>, 448 Fed. Appx. 184 (3d Cir. 2011)(rejecting claims that discipline under Code 108 for possession of a cell phone violates due process, under the APA or "void for vagueness" doctrine, and rejecting equal protection claims); <u>Patel v. Zenk</u>, 447 Fed. Appx. 337 (3d Cir. 2011)(same); <u>Robinson v. Warden, FCI Fort Dix</u>, 250 Fed. Appx. 462, 464 (3d Cir. 2007)(same).   <u>See</u> <u>also</u> <u>Douglas v. Zickefoose</u>, 2012 WL 266364, *15-16 (D.N.J. Jan. 27, 2012)(same).

　　Indeed, relying on Third Circuit cases, and this District's rulings on similar circumstances, this Court finds that the BOP's definition of hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations as suggested by Petitioner.  <u>See</u> <u>Hicks v. Yost</u>, 377 Fed. Appx. 223 (3d Cir. 2010)(BOP's definition of hazardous tool in code 108 to

include a cell phone is not plainly erroneous or inconsistent
with BOP regulations); McGill v. Martinez, 348 Fed. Appx. 718 (3d
Cir. 2009)(where officer found a cell phone and a charger in
petitioner's cubicle, BOP did not violate due process or abuse
its discretion in sanctioning him 40 days of good conduct time
for possession of hazardous tool, code 108); United States v.
Blake, 288 Fed. Appx. 791, 794-95 & n.4 (3d Cir. 2008)(rejecting
void for vagueness argument where inmate found guilty of
possession of cell phone and charger); Robinson, 250 Fed. Appx.
at 464 ("The BOP's definition of a hazardous tool to include a
cell phone is not plainly erroneous or inconsistent with BOP
regulations, see Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389
(3d Cir. 2001), and Robinson's conduct clearly falls within Code
108"); Ortiz v. Zickefoose, 2011 WL 1675003 (D.N.J. May 3,
2011)(denying habeas corpus relief who argued that possession of
a cell phone was not violation of code 108); Persaud v. Samuels,
2007 WL 1959275, *1 (D.N.J. July 3, 2007)(possession of cell
phone charger in 2006).

    Under these circumstances, this Court rejects Petitioner's
argument that the DHO abused its discretion in finding that he
committed a code 108 violation and finds that Code 108 was
appropriately applied to Petitioner's conduct, and that there was
sufficient notice that possession of a cell phone was prohibited.
Indeed, as the above case law demonstrates, Code 108 has been
consistently applied to the BOP inmate population at large for

                                   30

the past few years.  Moreover, cases upholding the recognition of cell phones as hazardous tools under Code 108 have specifically acknowledged that these devices and related components are frequently used by inmates to circumvent inmate phone monitoring, and to assist inmates in escaping from prison by keeping inmates informed of special counts and staff locations, which poses a serious threat to the security of the institution, its inmates and staff.  See Robinson, 250 Fed. Appx. at 464, cited in Curry v. Zych, 2010 WL 864486, *4 (E.D. Mich. March 9, 2010)(citing cases).

Further, the BOP's inclusion of cell phones and related components as hazardous tools under Code 108 is simply an expanding interpretation of what constitutes a hazardous tool so that the BOP can effectively address the evolving ways inmate conduct and the introduction of contraband can threaten institutional safety and security.  Such an interpretation is not a legislative rule, and thus is not subject to the notice-and-comment requirement of the APA, as suggested by Petitioner.  See Ausberry v. Grondolsky, 2008 WL 4225174, *4 (D.N.J. Sept. 9, 2008)(BOP disciplinary guidelines are not subject to the notice and comment requirements of the APA because they are internal agency guidelines that are subject to being altered at will), citing Reno v. Koray, 515 U.S. 50, 61 (1995); Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (rejecting prisoner's argument that BOP's change in policy was invalid because it was not

31

promulgated in accordance with the APA, as agency guidelines are "promulgated internally and may be altered at will by the BOP"); Koray v. Sizer, 21 F.3d 558, 562 (3d Cir. 1994)(internal agency guidelines may be altered by the BOP at will and are not subject to the notice and comment requirements of the APA), rev'd on other grounds sub nom Reno v. Koray, 515 U.S. 50 (1995).

Finally, this Court observes that Petitioner cannot argue that he did not have notice that possessing a cell phone may be charged as a Code 108 offense because, at FCI Fort Dix, the inmate population was provided ample notice of such, since as early as May 2005, through posted memoranda, town hall meetings, and the FCI Fort Dix Admissions and Orientation Handbook.  (See Moran Decl. at ¶¶ 9-10, Ex. 7; see also Robinson, 250 Fed. Appx. at 463 (citing a May 5, 2005 memorandum at FCI Fort Dix). Petitioner was designated to FCI Fort Dix when the rule changed, and thus, he received notice of it, even though personal notice is not required.

<u>**CONCLUSION**</u>

Therefore, based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit.  An appropriate Order accompanies this Opinion.


**March 11, 2013**          **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                            Chief U.S. District Judge